[Cite as *State v. Murphy*, 2016-Ohio-8147.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104297**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAYSON MURPHY

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-595593-A

**BEFORE:** E.A. Gallagher, J., Keough, P.J. and Boyle, J.

**RELEASED AND JOURNALIZED:** December 15, 2016

**ATTORNEY FOR APPELLANT**

Erin R. Flanagan
75 Public Square, Suite 920
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: Denise Salerno
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, J.:

{¶1} Jayson Murphy appeals his ten-year sentence after he pled guilty to one count of kidnapping in violation of R.C. 2905.01(A)(4). Murphy argues that the record is "silent" as to the trial court's analysis of the R.C. 2929.12 factors when imposing his sentence and that his sentence is, therefore, "otherwise contrary to law" under R.C. 2953.08(G)(2)(b). For the reasons that follow, we affirm Murphy's sentence.

**Factual and Procedural Background**

{¶2} On May 6, 2015, a Cuyahoga County Grand Jury indicted Murphy on two counts of rape, two counts of complicity and one count of kidnapping in violation of R.C. 2905.01(A)(4). The charges stemmed from the alleged rape and kidnapping of B.H. by Murphy and two other, unidentified males on May 12, 1995.

{¶3} On May 12, 1995, B.H. was` with a friend in the Flats in Cleveland. At approximately 2:30 a.m., B.H. left the Flats and started to walk home. As B.H. walked across the bridge at Merwin Avenue and Center Street, a car with three males pulled up alongside her. The men grabbed B.H. by the hair and pulled her into the car. They drove her to an apartment on the east side of Cleveland where the men beat her in the head and face and forced her to perform oral sex. The driver of the vehicle, later identified as Murphy, raped B.H. vaginally. After several hours, the men let B.H. go. B.H. walked to a nearby gas station from where she contacted police and reported the incident. The police took B.H. to Huron Hospital where she was treated for her injuries and a rape kit was collected.

**{¶4}** B.H. provided a description of the perpetrators and the vehicle, including the vehicle's license plate number, to police. B.H. informed police that the driver of the vehicle was referred to as "Jayson" and wore a necklace inscribed with the word "Duss."

**{¶5}** The police learned that the vehicle was registered to Murphy and that Murphy went by the nickname "Duff." Detectives thereafter scheduled an interview with B.H. but she did not show up. As a result, the case was closed.

**{¶6}** In October 2012, B.H.'s rape kit was sent out for testing. A match was made through the Combined DNA Index System ("CODIS") between Murphy and DNA from semen found on B.H.'s skirt collected as part of the rape kit.

**{¶7}** On March 2, 2016, Murphy pled guilty to the kidnapping count. The trial court found that Murphy entered his plea knowingly, intelligently and voluntarily and accepted his guilty plea. In exchange for Murphy's guilty plea on the kidnapping count, the remaining counts against him were nolled.

**{¶8}** The trial court proceeded directly to sentencing. Prior to imposing sentence, the court heard from Murphy, defense counsel and the state. Defense counsel stated that Murphy had admitted to kidnapping B.H. and indicated that the state had agreed to the plea because Murphy "cooperated and gave the names of other people involved." He asked that the court consider a concurrent sentence. Murphy stated only that he was told his sentence would be run concurrently to the sentence he was then serving.

**{¶9}** The state's attorney requested that consecutive sentences be imposed, setting forth the facts of the alleged incident, explaining the impact the assault had on B.H. and her husband and indicating that Murphy had "a criminal history going back to 1993."

**{¶10}** At the time of his sentencing, Murphy was serving a 20-year prison sentence for four unrelated sexual batteries founded in a 2009 case. The trial court indicated that it had "read [Murphy's] criminal background" and imposed a ten-year prison sentence on the kidnapping charge, to be served concurrently to the sentence Murphy was serving in the 2009 case, as follows:

> After consideration of the record, oral statements made today, the purposes and principles of sentencing, the seriousness and recidivism factors relevant to this offense and this offender, and the need for deterrence, incapacitation, rehabilitation and restitution, it is ordered that the defendant serve ten years in prison on the sole count of this case with the sentence to be served concurrently to the sentence he's currently serving.

The trial court also imposed five years of mandatory postrelease control.

**{¶11}** Murphy appeals his sentence, raising as the sole assignment of error for review that "[t]he trial court imposed a sentence 'otherwise contrary to law.'"

**Law and Analysis**

**{¶12}** We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 21-23. Under R.C. 2953.08(G)(2), an appellate court must "review the record,

including the findings underlying the sentence * * * given by the sentencing court." An appellate court "may increase, reduce, or otherwise modify a sentence" or it may vacate a sentence and remand the matter to the trial court for resentencing if it "clearly and convincingly" finds either that: (1) "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant" or (2) "the sentence is otherwise contrary to law." R.C. 2953.08(G)(2); *Marcum* at ¶ 1, 21-23. A sentence is contrary to law if the sentence falls outside the statutory range for the particular degree of offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. *See, e.g., State v. Pawlak*, 8th Dist. Cuyahoga No. 103444, 2016-Ohio-5926, ¶ 58; *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 8, citing *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10. When a sentence is imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12, "[a]n appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Marcum* at ¶ 23.

{¶13} Murphy does not dispute that his sentence is within the applicable statutory range. He contends, however, that his sentence is "otherwise contrary to law" and should be vacated because "the record is completely silent on the trial court's

consideration of the [s]ection 2929.12 factors" and because the trial court's imposition of a sentence "without any specific rationale for doing so" violates his constitutional right to due process. Murphy asserts that a trial court's "silent contemplation" of the R.C. 2929.12 factors, without an "articulate[d] reasoned basis" for its imposition of a particular sentence, "does not provide either a defendant or a reviewing court enough context to understand and evaluate the validity of a particular punishment." Murphy argues that he "simply and rightfully wants to know 'why?'" the trial court sentenced him to ten years in prison for kidnapping, asserting that "[t]he record provides no context for him to understand his punishment."

{¶14} R.C. 2929.11 provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve" two "overriding purposes" of felony sentencing: "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A)-(B). The statute further provides that "[t]o achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A). A court imposing a sentence for a felony "has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code." R.C. 2929.12(A). The sentencing court must consider various seriousness

factors set forth in R.C. 2929.12(B) and (C) and recidivism factors set forth in R.C. 2929.12(D) and (E) in determining the most effective way to comply with the purposes of sentencing set forth in R.C. 2929.11.

{¶15} Although the trial court must *consider* the purposes of felony sentencing set forth in R.C. 2929.11 as well as the sentencing factors set forth in R.C. 2929.12 when sentencing a defendant on a felony, the trial court is not required to use particular language or make specific findings on the record to demonstrate its consideration of those purposes, principles and factors. Thus, the trial court is not required to state on the record which factors it found pertinent in sentencing the defendant or to demonstrate how it applied the purposes, principles and factors in deciding upon an appropriate sentence. *See, e.g., State v. Gaines*, 8th Dist. Cuyahoga No. 103476, 2016-Ohio-4863, ¶ 11; *State v. Sutton*, 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074, ¶ 72. It is enough that the trial court state, in its sentencing entry, that it considered the required factors. *See, e.g., Gaines* at ¶ 11.

{¶16} In this case, the trial court stated in its sentencing journal entry: "The Court considered all required factors of the law. The Court finds that prison is consistent with the purpose of R.C. 2929.11." Further, the transcript from the sentencing hearing indicates that the trial court did, in fact, consider both R.C. 2929.11 and 2929.12 in sentencing. The trial court expressly stated at the sentencing hearing that, in imposing a ten-year concurrent sentence, it considered "the purposes and principles of sentencing, the seriousness and recidivism factors relevant to this offense and this offender, and the need

for deterrence, incapacitation, rehabilitation and restitution." Murphy argues that the trial court's "mere recitation" of a partial list of R.C. 2929.12 factors without showing how they apply specifically to his kidnapping offense "provides only lip-service to Ohio's felony sentencing statutes, as well as his due process rights." However, this was sufficient to establish that the trial court considered all of the relevant sentencing factors in sentencing Murphy and that it fulfilled its obligations under R.C. 2929.11 and 2929.12. *See, e.g., Gaines* at ¶ 11; *Sutton* at ¶ 72.

{¶17} Murphy also argues that "[w]hile this Court can find that the lower court adhered to the statutory requirements of Ohio's sentencing scheme, it has no information to determine whether ten years of confinement comports with Appellant's constitutional rights." Murphy cites no authority to support the proposition that his constitutional right to due process imposes an obligation on the trial court that the trial court does not otherwise have under Ohio's sentencing statutes to explain why it imposed a particular sentence. Further, Murphy does not contend that his ten-year sentence for kidnapping is unconstitutional. Accordingly, there is no need for this court "to determine whether ten years of confinement comports with Appellant's constitutional rights."

{¶18} Moreover, a trial court's failure to issue findings or to provide a "specific rationale" for the sentence it imposes does not preclude a meaningful review of a defendant's sentence by an appellate court. To the extent an appellate court is permitted to review a defendant's sentence, it can examine all the information in the record that the trial court relied upon in determining the appropriate sentence, including the transcript of

the sentencing hearing. Murphy does not claim that his ten-year sentence was contrary to law or otherwise improper aside from the trial court's failure to provide a specific rationale for imposing it. Accordingly, there is nothing here for this court to review.

{¶19} To the extent Murphy "simply and rightfully" wants to know "why" he received a ten-year sentence, that is clear from the record. As the trial judge explained, "the purposes and principles of sentencing, the seriousness and recidivism factors relevant to this offense and this offender, and the need for deterrence, incapacitation, rehabilitation and restitution" supported a ten-year sentence here. Murphy committed a heinous crime. He admitted to kidnapping a young woman "by force, threat or deception * * * for the purpose of engaging in sexual activity with her against her will." The facts of the incident as well as Murphy's criminal history, including his prior conviction for four other, unrelated sexual batteries, were discussed at the sentencing hearing. When he addressed the court, Murphy expressed no remorse for his actions or the harm he had caused the victim and her family; he simply asserted that he was entitled to a concurrent sentence. The only potential mitigating factors offered by the defense was the fact that Murphy had admitted to his crime and defense counsel's claim that Murphy had cooperated with police and assisted in identifying the other males involved in the incident. Surely, this record provides sufficient "context" for Murphy to understand "why" the trial court sentenced him to ten years in prison.

{¶20} Murphy's sentence is not clearly and convincingly "otherwise contrary to law." As such, Murphy's assignment of error lacks merit and is overruled.

**{¶21}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MARY J. BOYLE, J., CONCUR